**DISTRICT OF OREGON: ss,** **AFFIDAVIT OF JOSHUA MCNEELY**

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Joshua McNeely, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Task Force Officer (hereinafter TFO) with the Drug Enforcement Administration ("DEA") and have been since February 2026. As a TFO of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I am also a Detective (police officer) with the Oregon State Police and have been a police officer with the Oregon State Police since July 2017 which allows me to investigate violations of state law as well. Prior to being employed by the Oregon State Police I was a Deputy Sheriff (police officer) with the Washington County Sheriff's Office from May 2011 until July 2017. Prior to being employed by the Washington County Sheriff's Office, I worked as a military police officer in the United States Marine Corps for five years where I conducted various criminal investigations and performed duties similar to a civilian police officer in both California and Japan. I hold a Basic, Intermediate and Advanced Police Certificate from the Oregon Department of Public Safety Standards and Training. My education background consists of a Bachelor of Science degree in criminal justice from the University of Phoenix. During my employment as a police officer my duties have included, but are not limited to the investigation of burglaries, criminal mistreatments, assaults, sexual assaults, thefts, criminal mischiefs, drug related crimes, fraud, identity theft, forgery, stolen gun cases, traffic crimes, death investigations and murders. During the course of my employment as a police officer in the State of Oregon I have received over 3000 hours of training. I am currently assigned to the criminal investigations division, drug enforcement section of the Oregon

State Police in the Northwest Region or Oregon. I am also currently assigned to the Seattle Division, Portland District Office of the Drug Enforcement Administration.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for **Ricardo Daniel Lozano-Andino** (hereinafter "**LOZANO-ANDINO**"), d.o.b. March xx, 2007, for the crime of possession with intent to distribute 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) (the Target Offense). The facts set forth in this affidavit were gained through my personal participation in the investigation as described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations. As set forth below, there is probable cause to believe, and I do believe, that LOZANO-ANDINO committed the Target Offense.

## Applicable Law

3. 21 U.S.C. § 841(a)(1) which makes it illegal to knowingly and intentionally distribute and possess with intent to distribute a controlled substance.

## Statement of Probable Cause

4. On November 11, 2026, at about 11:25 am, Trooper Steven Brown, whom I know to be police officer with the Oregon State Police (hereinafter "OSP"), conducted a traffic stop on a 2002 Toyota Prius with Oregon license plate 907DYY and vehicle identification number JT2BK12U120051785 (hereinafter "Target Vehicle"). Trooper Brown stopped the vehicle for violation of Oregon Revised Statute 803.540 Failure to display plates since the vehicle did not have a front license plate displayed. During the traffic stop the driver initially identified himself as

"Angel Daniel Andino-Salazar" with a date of birth of March xx, 2004. Following a check of available law enforcement databases, Trooper Brown was unable to locate a record for the name provided.

5. Trooper Brown called another Trooper, Patricia Lund whom I know to be a police officer with the Oregon State Police, to assist with translating over the telephone since the driver spoke limited English. Trooper Lund warned the driver about providing false information regarding their name, but the driver continued to be reluctant in providing their name and date of birth even in Spanish. The driver then changed their date of birth and now said it was March xx, 2007, and provided a different name of "Angel Daniel Lozano-Andino." Trooper Lund was able to locate a near hit for a wanted person with the name "Ricardo Daniel Lozano-Andino" and when confronted the driver then admitted that this near hit was in fact his real name. It was determined **LOZANO-ANDINO** had an arrest warrant out of the State of Colorado for two counts of possession and distribution of fentanyl. **LOZANO-ANDINO** was also able to show Trooper Brown a photograph of his Honduran passport which matched the information related to the wanted person.

6. Trooper Brown ultimately arrested **LOZANO-ANDINO** for the active warrant and for violation of Oregon Revised Statute 162.385 Giving false information to a peace officer in connection with a citation or warrant. The Target Vehicle was towed from the scene by Elite Towing and was towed to their lot at 5838 SE 111th Avenue in Portland, Oregon. Trooper Brown did not inventory or search the Target Vehicle completely prior to the Target Vehicle being towed. Trooper Brown transported **LOZANO-ANDINO** to the Multnomah County Detention Center. While **LOZANO-ANDINO** was being processed into the jail, staff members discovered **LOZANO-ANDINO** was concealing something, possibly in his anus, and conducted a more

thorough search. During the search, jail staff discovered two baggies of a white powdery substance (suspected to be fentanyl) concealed in or on **LOZANO-ANDINO**'s person.

7. Trooper Brown contacted me to notify me of the incident and substantial quantity of suspected fentanyl recovered. I, along with DEA Special Agent Kenneth Bain, responded to downtown Portland to assist with the investigation. Trooper Brown transported **LOZANO-ANDINO** to the DEA Office for further processing.

8. Upon arrival at the DEA Office we field tested the white powdery substance was taken from **LOZANO-ANDINO**'s person and a sample field tested positive for fentanyl, a Schedule II controlled substance. I have found such field tests to be reliable with subsequent forensic analysis repeatedly confirming the results. The two baggies were weighed separately and each bag weighed approximately 27 grams, for a total weight of approximately 54 grams, with packaging. This weight is consistent with the weight utilized by drug traffickers to individually sale ounces of illicit drugs.

9. During a post-*Miranda* interview of **LOZANO-ANDINO**, he stated he did not use fentanyl, but would also not admit to selling fentanyl. **LOZANO-ANDINO** denied consent to search his phone and his vehicle. He also would also not provide the address where he lives. **LOZANO-ANDINO** did, however, provide his telephone number of 510-xxx-2905. A check of this telephone number revealed it was in contact with a known drug courier in the Portland, Oregon area on October 13, 2026.

10. I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin. I know that 2 mg. of fentanyl can be a potentially fatal dose. I know that fentanyl traffickers regularly buy and sell bulk fentanyl pills (counterfeit M30 pills manufactured

with fentanyl), as well as bulk fentanyl powder. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes, often by using a straw. Sometimes a user will simply ingest the pills or inhale the powdered fentanyl. I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out. I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram and will regularly buy it in amounts of less than a gram up to several grams at a time. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities. I know that a person possessing 10 grams or more of fentanyl powder does not possess the fentanyl for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

11. **LOZANO-ANDINO** was processed and was transported by Trooper Brown back to the Multnomah County Detention Center where LOZANO-ANDINO was now being lodged on a federal hold.

12. On November 11, 2026, at about 6:15 pm, I, along with SA Bain, arrived on scene at Elite Towing located at 5838 SE 111th Avenue in Portland, Oregon. Deputy Bryson Ricker with the Clackamas County Sheriff's Office, whom I know to be a corrections officer in the State of Oregon, also arrived on scene a short time later. Deputy Ricker is a canine handler and the canine is trained to alert to the presence of narcotics. Deputy Ricker deployed his canine on the Target Vehicle and the canine alerted to the presence of narcotics near the right rear passenger door of the vehicle. The Target Vehicle was left secured in the Elite Towing lot.

///

**Conclusion**

13. Based on the foregoing, I have probable cause to believe, and I do believe, that **Ricardo Daniel Lozano-Andino** has committed the felony crime of possession with intent to distribute 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). I therefore request that the Court issue a criminal complaint and arrest warrant for **LOZANO-ANDINO**.

14. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Joshua McNeely
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 12 ~~a.m.~~/p.m. on November 12, 2026.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE